ROBERT KAPLAN et al., Individually and as Members of KAPLAN & WEISSMAN, a Partnership, Respondents, v MARTIN HEINFLING et al., Appellants, et al., Defendant.

First Department, March 17, 1988

## APPEARANCES OF COUNSEL

*Robert J. Kaplan* of counsel *(Mazur, Carp & Barnett, P. C.,* attorneys), for respondents.

*Joseph L. Forstadt* of counsel *(James Falick* with him on the brief; *Stroock & Stroock & Lavan),* for appellants.

## OPINION OF THE COURT

SANDLER, J.

This action was originally commenced by Robert Kaplan and Steven Weissman, individually and as members of the partnership known as Kaplan & Weissman, to recover damages on varied grounds arising out of the alleged wrongful termination of the partnership as counsel to Englishtown Sportswear, Ltd. (Englishtown).

The plaintiff Robert Kaplan is the son of Eli Kaplan, who, during the relevant period of time, owned shares in Englishtown, together with the individual defendants Martin Heinfling and Leo Zelkin, and two others. Eli Kaplan and the two individual defendants were officers and directors of Englishtown. The complaint alleged that as part of a scheme to coerce Eli Kaplan into selling his shares in Englishtown to Heinfling, the individual defendants induced Robert Kaplan to resign from a law firm with which he was then associated and to form a new law firm. It is also alleged that in furtherance of that scheme the defendant Heinfling, with the express approval of the defendant Zelkin, represented to Robert Kaplan that so long as Heinfling was affiliated with Englishtown, Kaplan and the firm that he would form would be general counsel to Englishtown, and that Englishtown would pay the

firm a retainer to be applied against time charges of $150,000 per year. These representations are claimed to have been false, and made for the purpose of misleading plaintiff, the object of the representations being to create a situation in which plaintiff's father could be coerced into selling his shares of Englishtown by the threat of terminating his son's law firm as counsel.

The complaint further alleged that the plaintiff, relying on these representations, left the law firm with which he was associated and formed the plaintiff partnership, incurring substantial expenses in connection with the formation of the new law firm. It is asserted that within one month after the law firm opened its offices the defendant Heinfling demanded that plaintiff's father sell his shares to Heinfling, threatening to terminate the plaintiff law firm as general counsel if Eli Kaplan did not agree. Upon Eli Kaplan's refusal to sell his shares, the defendant Zelkin, president of Englishtown, terminated plaintiff's firm as counsel for Englishtown.

Some six causes of action were set forth in the original complaint. Defendants moved to dismiss pursuant to CPLR 3211 (a) (7), alleging that each of the causes of action was legally insufficient. In a thoughtful opinion, Special Term granted the motion to dismiss except with regard to the second cause of action, which sought to recover damages from the individual defendants for fraudulent representations, and the sixth cause of action claiming that the individual defendants had tortiously interfered with plaintiff's contract with the corporation.

As to the second cause of action, Special Term agreed with defendants that under the principles set forth in *Demov, Morris, Levin & Shein v Glantz* (53 NY2d 553) recovery for fraudulent representations would be precluded. However, Special Term held that the decision in *Demov, Morris,* although protecting a client from such a suit, did not affect the right of counsel to sue for fraudulent representations corporate officers who were not themselves clients.

As to the sixth cause of action alleging tortious interference by the individual defendants with plaintiff's contract with the corporation, Special Term held that the complaint adequately asserted an improper purpose for the discharge of plaintiff sufficient to withstand a motion to dismiss.

Following the order appealed from, an amended complaint was served setting forth with legally immaterial changes the

two causes of action sustained by Special Term, the principal change being that the amended complaint was brought in the name of Robert Kaplan, individually and as successor in interest to the partnership, and was brought against the individual defendants only. The parties have stipulated that the legal issues presented are identical with those raised by the appeal from the two causes of action sustained by Special Term, and have requested the court accordingly not to dismiss the appeal from the original order but rather to address the legal issues presented which have not in any way been affected by the allegations of the new complaint. We agree that this is an appropriate procedure under the circumstances.

Analysis of the issues presented by the cause of action seeking damages for fraudulent representations by the individual defendants necessarily begins with a consideration of the Court of Appeals opinion in *Demov, Morris, Levin & Shein (supra)*, clearly the most authoritative statement of the applicable principles. The issue before the Court of Appeals in *Demov* arose out of an action by a law firm for damages for fraud on the claim that the plaintiff law firm was induced to perform certain legal services for the defendant by the explicit promise of the defendant that the firm would be retained in a subsequent condemnation proceeding, a promise which was alleged to have been fraudulent when made.

Preliminarily the court's opinion observed *(supra,* 53 NY2d, at 556): "The unique relationship between an attorney and client, founded in principle upon the elements of trust and confidence on the part of the client and of undivided loyalty and devotion on the part of the attorney, remains one of the most sensitive and confidential relationships in our society * * * It follows, then, that an attorney cannot represent a client effectively and to the full extent of his or her professional capability unless the client maintains the utmost trust and confidence in the attorney."

The opinion went on to reaffirm the rule that *(supra,* at 556-557): "[A] client may at anytime, with or without cause, discharge an attorney in spite of a particularized retainer agreement between the parties * * * Moreover, we have held that since the client has the absolute right on public policy grounds to terminate the attorney-client relationship at any time without cause, it follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract, and the attor-

ney discharged without cause is limited to recovering in *quantum meruit* the reasonable value of services rendered".

Addressing the applicability of these well-established principles to an action by a law firm for damages for fraudulent representation, the opinion agreed that in the usual situation a deliberate misrepresentation of present intent made to induce another to enter a contract will normally constitute actionable fraud if there is reliance by the party to whom the representation was made. However, the court concluded that the application of that principle to the action before it would be violative of strong public policy. The court said *(supra,* at 557): "The public policy of New York which permits a client to terminate the attorney-client relationship freely at any time, notwithstanding the existence of a particularized retainer agreement between the parties, would be easily undermined if an attorney could hold a client liable for fraud on the theory that the client misrepresented his or her true intent when the retainer was executed. When an attorney-client relationship deteriorates to the point where the client loses faith in the attorney, the client should have the unbridled prerogative of termination. Any result which inhibits the exercise of this essential right is patently unsupportable."

Finally, the court went on to state that, as a matter of law, the element of reliance essential to a cause of action for fraudulent misrepresentation of present intent cannot be established in such a case *(supra,* at 557-558): "Given the rule that a client may discharge an attorney without cause at any time, it is evident that appellants could not rely upon Glantz' promise to substitute them as attorneys of record in the condemnation proceeding any more than they could rely upon continued representation in the event they had actually been substituted."

It is true that the court did not explicitly address in *Demov, Morris* (53 NY2d 553, *supra)* the previously well-established exception to the rule permitting a client without cause to discharge an attorney, which had been developed in situations where an attorney is employed under a general retainer for a fixed period to perform legal services in relation to matters that may arise during the period of a contract. *(See, e.g., Martin v Camp,* 219 NY 170; *Greenberg v Remick & Co.,* 230 NY 70; *Matter of Montgomery,* 272 NY 323.)

■ We think it unnecessary to consider whether, and if so, to what extent, the analysis set forth in *Demov, Morris (supra)*

implies some limitation on the continuing applicability of that exception. It is sufficient here to observe that a promise by an officer of the corporation that plaintiff and his firm would continue as general counsel to Englishtown so long as the officer was affiliated with that company does not establish a general retainer for a fixed term within the contemplation of the authorities relied upon. Moreover, the written statement of the retainer prepared by the plaintiff at the request of Englishtown, from which is omitted any reference to the duration of the arrangement, clearly describes a relationship that was understood by the parties to be terminable at will. Additionally, the letter of termination annexed to the amended complaint makes it clear that the plaintiff firm's duties embraced litigation, a factor clearly identified in one of the principal authorities relied upon by plaintiffs as inconsistent with the exception upon which plaintiffs rely. *(See, Greenberg v Remick & Co., supra, 230 NY, at 75.)*

■ In sustaining the cause of action for fraudulent representation against the individual defendants, Special Term agreed that such an action could not be sustained against a corporation under the principles set forth in *Demov, Morris (supra)* but held that those principles were inapplicable to an action against officers of the corporation who were not themselves clients. This distinction seems to us ultimately untenable, and irreconcilable with the public policy set forth in *Demov, Morris.* To hold that a lawyer, whose services are terminated by a corporate client, may not sue the corporation for fraudulent representations, but may sue those officers through whom the corporation functions, will inevitably inhibit the exercise of the "essential right" of termination that the opinion in *Demov, Morris* firmly recognized as a "strong public policy".

■ The public policy forcefully and comprehensively set forth in *Demov, Morris (supra)* seems to us also to require dismissal of the sixth cause of action seeking damages from the individual defendants for alleged tortious interference in the plaintiff's employment as counsel to Englishtown.

The most immediately relevant exposition of the rule governing an action to recover damages for interference with a contract terminable at will appears in the opinion of the Court of Appeals in *Guard-Life Corp. v Parker Hardware Mfg. Corp.* (50 NY2d 183), a case in which the plaintiff sought damages from a competitor for alleged interference with a voidable contract. The single issue dividing the court in *Guard-Life* was whether a voidable contract should be evalu-

ated for purposes of the applicable rule as though such a contract was terminable at will. Determining that a voidable contract should be so considered, the majority of the court then, in accord with the rule set forth in the Restatement (Second) of Torts § 768, held *(supra,* at 187): "As a general rule, if no improper means have been employed, a competitor may not be held liable for intentional interference with a contract that is unenforceable for lack of mutuality."

Undeniably there are special considerations relating to an action against a competitor for interference with a contract that is voidable or terminable at will, as is reflected in the very separate treatment of that particular situation in the Restatement of Torts. The Court of Appeals had no occasion in *Guard-Life* to consider the possible application to actions not involving competitors of the rule limiting liability to circumstances in which improper means were used. Recognizing that the issue remains an open one, and limiting ourselves to the facts of the immediate case, we are persuaded that the public policy set forth in *Demov, Morris* (53 NY2d 553, *supra)* justifies, at least under the circumstances presented here, the application of the same rule.

As already made clear, the retainer of plaintiff as counsel to Englishtown was terminable by that company at will. As the Court of Appeals forcefully pointed out in *Demov, Morris (supra,* at 557), it is the public policy of this State that a client "should have the unbridled prerogative of termination. Any result which inhibits the exercise of this essential right is patently unsupportable."

In this case plaintiff's retainer was terminated by Leo Zelkin, president of Englishtown, acting under authority which he clearly possessed in his corporate capacity. Nothing in the nature of that termination may fairly be characterized as improper. The claim that the original employment of plaintiff was part of an improper scheme, though pertinent to the action for fraud discussed above, seems to us irrelevant to the claim that the individual defendants wrongfully interfered with plaintiff's contractual arrangements with Englishtown. We are persuaded that to permit the termination of plaintiff's retainer of counsel, although accomplished through appropriate and lawful means, to be a basis for an action for damages against the president of a corporation, and another officer and board member, would have a clear tendency to inhibit the exercise of the client's "unbridled prerogative of termination".

In this case such a result seems to us peculiarly inappropriate, for it is surely clear from the allegations of the complaint, as well as from the supporting affidavits submitted by the plaintiff, that there existed at the time of plaintiff's termination as counsel an adversary relationship between plaintiff's father and other stockholders of Englishtown that made it particularly unsuitable for plaintiff to continue in a role in which it would have been his obligation to act with fastidious impartiality. To the extent to which the individual defendants transgressed the rights of plaintiff's father, and even to the extent to which their conduct constituted wrongs to the corporation, it is clear that the law provides adequate remedies that do not require undermining the public policy set forth so explicitly in *Demov, Morris (supra)*.

Accordingly, the order of the Supreme Court, New York County (Edward Greenfield, J.), entered May 29, 1987, which, *inter alia,* denied defendants' motion, pursuant to CPLR 3211 (a) (7), to dismiss the second and sixth causes of action of plaintiffs' verified complaint, alleging, respectively, fraud and tortious interference with plaintiffs' retainer agreement with Englishtown Sportswear, Ltd., should be reversed to the extent appealed from, on the law, without costs, and the motion to dismiss the second and sixth causes of action should be granted.

MURPHY, P. J., SULLIVAN and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered on May 29, 1987, unanimously reversed to the extent appealed from, on the law, without costs and without disbursements, and the motion to dismiss the second and sixth causes of action is granted.