235 N.J. Super. 168 (1989)
561 A.2d 694
C.R. BARD, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
WORDTRONICS CORP., A CORPORATION OF THE STATE OF NEW YORK, AND WX COMMUNICATIONS, INC., A SUBSIDIARY CORPORATION, AND MEADOX MEDICALS, INC., A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division (Civil) Union County.
April 28, 1989.
*170 Richard E. Brennan, for plaintiff (Shanley & Fisher, attorneys).
Thomas J. Goodwin, for defendant (Krugman, Chapnick & Grimshaw, attorneys).
MENZA, J.S.C.
This is defendant  Meadox's motion for summary judgment. The unique question presented is whether a true statement made in a letter to third persons by one competitor about another competitor's product can constitute a basis for liability, when the competitor disseminates the information through a marketing survey company employed for that specific purpose.
Plaintiff, C.R. Bard, and defendant, Meadox Medicals, are manufacturers of artificial vascular grafts, a medical device used by surgeons. (The device is also known as a vascular prosthesis). Defendant, Wordtronics Corporation, is a company engaged in the marketing of various products.
In February 1988, the Food and Drug Administration (FDA), adopted a regulation which required all manufacturers of vascular grafts to obtain from the FDA either premarketing approval (PMA), or an investigational device exemption (IDE), as prerequisites to the lawful marketing of their product.
Plaintiff, which had marketed vascular grafts for many years prior to the FDA regulation, failed to comply with the FDA *171 requirement, and continued to market its grafts without FDA approval.
Sometime after the adoption of the FDA regulations, defendant-Meadox employed defendant-Wordtronics to assist it in the marketing of its vascular grafts.
Thereafter, Wordtronics sent letters to a number of health care providers whose names had been furnished by Meadox, informing them of the fact that there was no currently marketed vascular graft which had FDA approval. The contents of this letter were prepared by Meadox. The letter stated:
On June 1, 1988, the Food and Drug Administration (FDA) stated that impregnated or coated vascular prosthesis will now be considered Class III medical devices. As such, manufacturers of these products must now submit an Investigational Device Exemption (IDE) for clinical evaluation and a Pre-marketing Approval Application (PMAA (sic)) for usage in general patient population.... To date, no currently marketed coated graft has yet been granted a PMAA (sic) by the FDA. However, one continues to be commercially marketed.
After receiving the letter, numerous medical-care providers either returned their store of vascular grafts to plaintiff or cancelled their existing orders.
Plaintiff claims that it has been damaged as a result of this letter, and has brought an action against defendants for the torts of interference with contractual relations, product disparagement and unfair competition. Plaintiff's position is succinctly set forth in its brief:
In a cunningly contrived masquerade conducted under the guise of an independent study by Wordtronics' nonexistent `Health Care Research Division,' defendants conducted a poison pen campaign against Bard's product in an underhanded and deceptive attempt `to get the market ready for (Meadox's) new competing graft.'
Defendant's actions are clearly in violation of the standards of fairness and commercial morality imposed by the law of this State.
Defendants respond that the contents of the letter were true and dealt with matters of public concern, and that therefore, plaintiff does not have a cause of action.
Interference with contracts is:
... imposed upon a defendant who intentionally and improperly interferes with the plaintiff's right to a contract with another person ... (or with) the *172 plaintiff's prospects of economic gain even where these prospects have not been reduced to a contract right. [Prosser & Keaton, Torts, (5 ed. 1984), § 129 at ___]
Product disparagement (injurious falsehood):
... consists of the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general, or even to some element of his personal affairs, of a kind calculated to prevent others from dealing with him or otherwise to interfere with others to his disadvantage. [Id. at ___]
This cause of action is an off-shoot of the cause of action for unlawful interference. It requires the communication of the falsehood to third persons. See Dairy Stores v. Sentinel Pub. Co., 104 N.J. 125, 134 (1986).
There is no distinct cause of action for unfair competition. It is a general rubric which subsumes various other causes of action.
The Restatement, (Torts 2d, § 768 (1979) sets forth the parameters within which a competitor may compete:
Competition as Proper or Improper Interference
(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
(a) the relation concerns a matter involved in the competition between the actor and the other and
(b) the actor does not employ wrongful means and
(c) his action does not create or continue an unlawful restraint of trade and
(d) his purpose is at least in part to advance his interest in competing with the other. [Id at ___]
Subsections (a), (c) and (d) are satisfied in this case. Plaintiff and defendant-Meadox are competitors; the letter concerned a matter which was the subject of their competition; the letter was distributed for the purpose of advancing the interest of defendant-Meadox, and defendant's action neither created nor constituted an unlawful restraint of trade.[1]
*173 It is plaintiff's contention that the letter was untruthful and misleading, and that defendant-Meadox harbored bad motives in disseminating it. It also contends that defendant-Meadox used wrongful means in competing with plaintiff. Specifically, it maintains that defendant-Meadox utilized defendant-Wordtronics as a conduit in order to give third persons the impression that the information in the letter was the result of an independent marketing research survey, when, in fact, it was only one competitor speaking disparagingly about another competitor's product. Plaintiff contends that the means used by Meadox were, therefore, unlawful.
Defendant's motive is not relevant to the determination of this case. Its motive was to compete, i.e., to induce users of the vascular grafts to purchase the device from the Meadox Company, rather than from plaintiff. There is simply nothing wrong with that. A competitor has an absolute right to take away as much of the "other fellow's" business as he can lawfully. See Louis Kamm, Inc., v. Flink, 113 N.J.L. 582, 587 (E. & A. 1934) ("Everyone has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition....").
With regard to the contents of the letter sent by Wordtronics, suffice it to say that the representation in the letter was straightforward and true. It is not improper to give truthful information to a customer about someone else's product, and this is so even if the purpose is to interfere with an existing or prospective contractual relationship.
Comment (b), § 772 of the Restatement, Torts 2d states:
(b) Truthful information. There is of course no liability for interference with a contract or with a prospective contractual relation on the part of one who merely gives truthful information to another. The interference in this instance is clearly not improper. This is true even though the facts are marshaled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for breaking his *174 contract or refusing to deal with another. It is also true whether or not the information is requested. [Id. at ___]
In Prosser, supra, the author states:
At this writing the only "fault" considered sufficient to justify a penalty for speech has been fault in ascertaining or speaking the truth. Conceivably courts may therefore protect speech that interferes with contracts on the ground that it is a representation of the truth or at least is not a falsehood; or even on the ground that however bad the speaker's motive may be, this kind of fault does not touch the issue of truth or falsity. But the question is as yet an open one. Aside from this, however, it is probably safe to assume that occasions privileged under the law of defamation are also occasions in which interference with contract by legal means would be considered justified. [Id. at ___]
The essence of plaintiff's claim is that defendant-Meadox was underhanded in the manner in which it disseminated the information, "sneaky" to use a colloquialism, and that its conduct was therefore unlawful. Liability of a competitor depends upon whether the means used to compete are unlawful. If the competitor employs unlawful means, he is liable. For example, if a competitor uses violence or engages in fraud or intimidation, or misrepresents, or threatens civil or criminal actions, or violates the law, then the competition is considered to be outside of permissible parameters, and liability will ensue. See McCue v. Deppert, 21 N.J. Super. 591, 595-596 (App.Div. 1952); Restatement, Torts 2d, supra, § 776-772. There is nothing in this case to indicate that defendant utilized any of these wrongful means.
Competition which violates established business ethics and customs is unlawful. Section 767  Business Ethics and Customs, comment on clause (a) of the Restatement, Torts 2d states:
Violation of recognized ethical codes for a particular area of business activity or of established customs or practices regarding disapproved actions or methods may also be significant in evaluating the nature of the actor's conduct as a factor in determining whether his interference with the plaintiff's contractual relationship was improper or not. [Id. at 32]
*175 The New Jersey courts agree.[2] In Leslie Blau v. Alfieri, 157 N.J. Super. 173 (App.Div. 1979), a case which involved a suit for broker's commission, the court said:
The very nature of ... [tortious interference] prohibits a "rule of thumb" in every case. [citation omitted] But where it appears to the judge as in this case, from sufficient facts and the legitimate inferences therefrom, that the elements of the tort may be present, including conduct which was both injurious and transgressive of generally accepted standards of common morality or of law, it is then for the jury or the fact finder to decide the issue. [at 187; citation omitted]
....
If ... the tortfeasor ... acted out of a motivation to enhance his financial position, for profit, then it is necessary for recovery that his conduct must have been transgressive of generally accepted standards of morality, i.e., a violation of standards of "socially acceptable conduct." [at 189].
Even truthful statements about another's product may impose liability if transgressive:
... the truth may be told in such a subtle and adroit way as to be misleading and deceptive. If the truth is so shaded or couched that it carries an inference or implication of deception, it is repugnant and, hence, assailable. When the truth is dressed to deceive, it will be stayed, just as falsity will be halted though regaled as truth. Both are equally offensive to the law and to business ethics.
[Bard-Parker Co., v. Crescent Manufacturers Co., 174 Misc. 356, 20 N.Y.S.2d 759, 763 (Sup.Ct. 1940)]
Plaintiff has not offered anything specific regarding its contention that defendant competed dishonestly. It has not demonstrated that defendant transgressed generally accepted standards of morality, nor has it demonstrated that the truth was so shaded as to be misleading. Instead, it speaks in glittering generalities of bad motives and underhanded conduct, offering no proofs in that regard, nor with regard to either *176 "recognized ethical business codes," or of "established customs or practices," which might prescribe unacceptable conduct. This is simply not enough.
We live, after all, in a society consumed by the desire to acquire wealth, enamored by entrepreneurship and enthralled by success. Competition is always the premise, winning always the goal. In such an environment, can one conclude that the means used by defendant in this case to compete with plaintiff were wrongful? I think not.
Plaintiff's remedy is in the market place, not in the courts.
Defendant's motion for summary judgment is granted.
NOTES
[1] There are no proofs of existing contracts which obligated any of the medical providers to purchase the devices from plaintiff.
[2] Federal Anti-Trust Law embraces a similar conception. 15 U.S.C.A. § 45(a)(1) states:

Unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce are declared unlawful.
The case of Spiegel v. F.T.C., 540 F.2d 287 (7 Cir.1976), has interpreted the statute:
A practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. [at 293]