**JACOMO INSURANCE SERVICE, INC.,**
Respondent/Cross–Appellant,

v.

Kenneth W. **BILLUPS,**
Appellant/Cross–Respondent.

No. WD 41811.

Missouri Court of Appeals,
Western District.

Feb. 20, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 27, 1990.

Application to Transfer Denied
May 15, 1990.

Carl H. Helmstetter, Terry W. Schackmann, Stephanie A. Mathews, Spencer Fane Britt & Browne, Kansas City, for appellant/cross-respondent.

George E. Kapke, Cochran, Kapke, Willerth & Overman, Independence, for respondent/cross-appellant.

Before ULRICH, P.J., and
SHANGLER and TURNAGE, JJ.

TURNAGE, Judge.

Jacomo Insurance Service, Inc. brought suit against Kenneth W. Billups for fraud, breach of contract, and tortious interference with a contract.[1] The jury returned a verdict in favor of Jacomo on the fraud claim in the amount of $90,000, for $88,000 on the breach of contract claim, and $35,000 in actual damages, and $35,000 in punitive damages on the tortious interference claim. The court entered judgment on the verdicts but thereafter sustained the motion for judgment notwithstanding the verdict on the breach of contract claim. The court entered judgment for $90,000 on the

---

1. Billups filed a counterclaim for commissions earned but not paid and libel. The jury found in favor of Jacomo and Billups has not preserved any question concerning the judgment entered on those verdicts.

fraud claim and $70,000 on the tortious interference claim.

Billups contends the court should have sustained his motion for judgment notwithstanding the verdict on all claims. Jacomo appeals the action of the court setting aside the verdict on the breach of contract claim. Judgment reversed as to the fraud and tortious interference claims and affirmed as to the breach of contract claim.

Billups started an insurance agency in Blue Springs. He later met Tom Alfrey who was also in the insurance business. Alfrey was employed by a large agency as an underwriter and Billups was interested in selling insurance. The two decided that their talents would mesh, with Billups handling the sales of property and liability insurance and Alfrey handling the underwriting.

After deciding that they would go into business together, Billups sold Alfrey one-half of the stock in Jacomo which Billups had previously incorporated.[2] Thereafter, Billups and Alfrey operated Jacomo, with Alfrey in charge of the inside operations and Billups working outside. In 1985 Billups decided that he wanted to leave Jacomo and offered to sell his half of the stock to Alfrey. Alfrey testified that Billups stated that he was leaving the area and was moving to the Virgin Islands. Alfrey and Billups agreed that Alfrey would pay Billups $90,000 for his half of the stock of Jacomo. In addition Alfrey paid Billups for his interest in the furnishings. The agreement to sell was drafted by the attorney who had represented Jacomo. The agreement did not contain any agreement on the part of Billups to refrain from engaging in the insurance business in the future.

After the sale from Billups to Alfrey of half of the stock of Jacomo, Billups and Alfrey agreed that Billups would remain at Jacomo as an employee to continue servicing policies that Billups had sold. One of the biggest customers of Jacomo was Danguard, a security agency, owned by Dan Bunch who had been a close friend of Billups for years.

In August, 1986 Billups announced that he was leaving Jacomo. At that time, during a visit with Dan Bunch, Billups told Bunch that he was leaving Jacomo and going into the insurance business on his own. Bunch stated that if Billups was leaving Jacomo that he was leaving also. Thereafter, Danguard placed a major policy with Billups in his new insurance business and placed other policies with other agencies.

Alfrey testified that he purchased Billups' half of Jacomo because of the statement that Billups had made that he was leaving the area and moving to the Virgin Islands. Alfrey stated that had he known that Billups would remain in the area and go into the insurance business himself after he sold out to Alfrey, that Alfrey would not have purchased Billups' stock in Jacomo.

Alfrey testified that there is an unwritten rule in the insurance business that an agent who sells his "book of business" will not compete with the purchaser for those customers included in the "book of business."[3] Alfrey stated that by purchasing one-half of the stock of Jacomo from Billups that he had purchased the "book of business" of Billups and that Billups was thereby precluded from competing with Jacomo in the insurance business. Alfrey also testified that Jacomo had a business relationship with Danguard and that when Billups left Jacomo he tortiously interfered with the expectancy which Jacomo had to continue as the agency writing policies for Danguard.

Jacomo submitted its case to the jury on a theory of fraud, breach of contract, and tortious interference with contract.

---

2. One share was sold to a third person, but that share was later purchased and for all practical purposes Alfrey and Billups each owned a one-half interest in Jacomo.

3. "Book of business" was defined in the testimony as a list of customers serviced by an agent or agency and represents the existing policy arrangement, including the business advantages and opportunities for policy renewal that the relationship between agent and customer includes.

From the testimony of Alfrey it is clear that the fraud count was based on the fact that Billups went into the insurance business in competition with Jacomo and not on the fact that Billups failed to leave Blue Springs and move to the Virgin Islands. The only damage Alfrey attributed to Billups' failure to leave Blue Springs was that Billups went into competition with Jacomo. No damage resulted from the failure of Billups to leave the area because if Billups had remained in Blue Springs, but stayed out of the insurance business, Jacomo would not have been damaged. The damage Alfrey testified about resulted solely from Billups starting an insurance agency. Thus, the alleged misrepresentation that Billups was leaving did not result in damage to Jacomo.

The breach of contract theory was based on the entry of Billups into the insurance business in competition with Jacomo. Alfrey testified at trial about the unwritten rule in the insurance business that the seller may not sell his "book of business" and later compete with the buyer. Jacomo in this appeal disclaims relying on any such unwritten rule. At the same time Jacomo advances no legal theory on which it bases its breach of contract claim, which in reality is a claim based solely on the competition Billups gave Jacomo when he entered into the insurance business.

■ It is apparent that the fraud claim and the breach of contract claim are both based on the fact that Billups went into business in competition with Jacomo after selling his share of the stock to Alfrey. The court was correct in concluding that the damages for fraud and breach of contract were duplicative and was correct in entering judgment notwithstanding the verdict on the breach of contract claim.

■ The question remains as to whether the court should have granted Billups' motion for judgment notwithstanding the verdict on the fraud claim. That question depends upon whether Jacomo, when it simply proved that an agreement was entered into for the sale of stock from Billups to Alfrey without any non-compete language and that Billups later opened an insurance business in competition with Jacomo, proved facts entitling it to relief. Jacomo fails to identify any legal theory which would entitle it to relief based upon the fact that Billups started an insurance business in competition with Jacomo. The failure to identify the legal theory supporting such claim is not surprising in view of the holding in *Dutcher v. Harker*, 377 S.W.2d 140, 144[6] (Mo.App.1964). There, Dutcher had sold a paint business and later went into the paint business again and solicited business in the area where his former business was operating. The court stated:

He solicited business in the Springfield area including old customers who were then customers of the defendants. This he had a right to do, so long as no deception or other unfairness was practiced, because the sale contract did not contain any restriction against his re-entering into business.

In addition, it is stated in 38 C.J.S. Goodwill § 12 p 957 (1943), "... in the absence of agreement respecting the right to compete, one who sells a business is not precluded from setting up, or engaging in, a similar business in the vicinity."

As pointed out in *Dutcher* and *C.J.S.* the rule is qualified that the seller not practice deception or other unfairness in conducting the new business. Here, there is no allegation or proof that Billups engaged in any unfairness or deception in setting up his new business. He did not appropriate any secret from Jacomo. The customers which Jacomo claims Billups "stole" from it were those to whom Billups had originally sold policies while at Jacomo. Nor is there any other unfair practice or deception proven in connection with Billups' operation of his new business.

Billups had the right to go into the insurance business after he sold his stock in Jacomo. Jacomo failed to prove any ground for relief against Billups by reason of his going into competition with Jacomo. For that reason the judgment based on a fraud theory, which in reality was based on Billups going into competition with Jacomo, is unsupported and cannot stand.

The third claim submitted by Jacomo was the tortious interference by Billups with the business expectancy which Jacomo had with Danguard. In *Briner Elec. Co. v. Sachs Elec. Co.*, 680 S.W.2d 737 (Mo.App. 1984), the court considered a claim of tortious interference made by a company against a competitor. In *Briner Elec. Co.* the court set out the elements required to prove tortious interference as: (1) existence of a valid business expectancy; (2) knowledge of the expectancy by the party being sued; (3) intentional interference which induced breach of the expectancy; (4) absence of justification; and (5) damages. *Id.* at 740[3]. The court adopted Restatement (Second) of Torts § 768 (1979) as bearing on the element of justification. The court quoted that section as follows:

> Competition as Proper or Improper Interference (1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
>
> (a) the relation concerns a matter involved in the competition between the actor and the other and
>
> (b) the actor does not employ wrongful means and
>
> (c) his action does not create or continue an unlawful restraint of trade and
>
> (d) his purpose is at least in part to advance his interest in competing with the other.
>
> (2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.

The evidence in this case brings Billups squarely within this provision of the Restatement. The matter involved was the sale of insurance to Danguard by Billups, which was a matter of competition between Billups and Jacomo.

Billups did not employ any wrongful means. His action did not create, nor continue, an unlawful restraint of trade and its purpose was to advance his interest in competing with Jacomo. Further, the relationship which Danguard had with Jacomo was terminable at will. Under the Restatement Jacomo failed to prove that Billups acted without justification in writing a policy for Danguard and thus, Jacomo's cause of action for tortious interference must fail.

The court should have sustained the motion for judgment notwithstanding the verdict as to all claims because Jacomo failed to prove any facts which would entitle it to relief on any of the three claims which it made against Billups. The judgment notwithstanding the verdict in favor of Billups on the breach of contract claim is affirmed. The judgment in favor of Jacomo on the fraud and tortious interference claim is reversed.

All concur.