This appeal arises out of a fraud action filed by Betty J. and Josephus Underwood against Adamson Ford, Inc., and its salesman Mike Baker, who sold them an automobile that the Underwoods say they believed to be new. The defendants moved for partial summary judgment on the issue of whether they had misrepresented that the automobile was new. The trial court granted the motion and made the judgment final pursuant to Rule 54(b), A.R.Civ.P. This appeal followed.
On September 30, 1986, Flora Lawler contacted Mike Baker at Adamson Ford, Inc., in Birmingham, about purchasing an *Page 52 
automobile. She entered into a conditional sales contract with Adamson Ford to purchase a red 1986 Ford Escort. One of the documents Ms. Lawler signed on that date provided that the purchase of the automobile was conditioned on a certain finance company's approval of a loan to Ms. Lawler. That agreement also stated:
 "Accordingly, I [Lawler] agree that the automobile which you [Adamson Ford] are delivering to me shall be considered a loan until the financing is approved or rejected. If my credit and the financing are approved, the sale shall be consummated, and the loan of the automobile will be ended. If my credit or the financing terms are not approved, I will return the car to you immediately and you will thereafter return my down-payment or deposit whether in cash or trade-in, and cancel the Retail Buyer's Order."
The odometer disclosure form completed on September 30 showed that the Escort had been driven eight miles. Ms. Lawler kept the car until October 3, 1986, when Mr. Baker telephoned to tell her that her loan had not been approved. Ms. Lawler returned the Escort to Adamson Ford that day. Although the testimony about the exact number of miles Ms. Lawler drove the car is unclear, it appears certain that she drove fewer than 100 miles. Ms. Lawler did not receive a bill of sale for the Escort, and Adamson Ford did not file an application for title in her name with the Alabama Department of Revenue.
On November 22, 1986, Betty and Josephus Underwood contacted Mr. Baker about purchasing a new, red automobile with an automatic transmission. Mr. Baker showed them the red Escort that Ms. Lawler had previously attempted to purchase. At that time, the vehicle had been driven 491 miles, according to Mrs. Underwood's deposition testimony. Mrs. Underwood testified that when she questioned why a new car had been driven so many miles, Mr. Baker told her that Adamson Ford had received it in trade from an Atlanta dealer and that the Escort had been driven to Birmingham from Atlanta.
The Underwoods decided to purchase the Escort. They signed numerous documents before leaving the dealership, including an application for title that indicated that the Escort was new, a disclosure form indicating an odometer reading of 491 miles, and a conditional purchase agreement like the one Ms. Lawler had signed, stating that the sale would not be consummated until the Underwoods' financing was approved.
A few days after the Underwoods purchased the Escort, Mrs. Underwood found inside the car the documents Lawler had signed when she attempted to purchase it a few weeks earlier. Mrs. Underwood testified that she telephoned Adamson Ford and asked Mr. Baker to explain again why the Escort had been driven so many miles and that he again said that the Escort had been traded for a vehicle in Atlanta. Mrs. Underwood stated that Mr. Baker assured her that the Escort was new and that no one else had signed papers relating to it. Later, when Adamson Ford employee Price Hollis learned that Mrs. Underwood had Ms. Lawler's documents, he told her that the Escort was still "new" because Ms. Lawler had not received title to the vehicle.
The Underwoods filed suit against Mr. Baker and Adamson Ford on July 8, 1987, claiming damages for fraud. They alleged that before the sale the defendants had represented that the Escort was new and that the odometer registered 491 miles because the car had been driven from a dealership in Atlanta. The Underwoods asserted that the defendants' representations were false and that they had relied on the representations in purchasing the automobile. They demanded $500,000 as compensatory and punitive damages.
On September 14, 1989, the defendants filed a motion for partial summary judgment only on the issue of whether their representation that the Escort the plaintiffs purchased was new was a false representation. The motion was based on the pleadings and all discovery, including the depositions of the Underwoods and Ms. Lawler. The plaintiffs filed objections to the defendants' motion and attached their affidavits, in which they stated that they *Page 53 
would not have purchased that Escort if they had known that it had been "given over to Flora Lawler" previously. The trial court granted the defendants' motion and entered a partial summary judgment, relying on this Court's decision in IveyCorp. v. Yates, 516 So.2d 558 (Ala. 1987).[1]
On appeal, the Underwoods argue that a close reading ofIvey Corp. v. Yates establishes that the trial court reached the wrong result, and that this case presents a question for a jury to resolve regarding whether the defendants' representations that the Escort was "new" constituted actionable fraud. They also contend that Baker deliberately misrepresented that the Escort had been received from an Atlanta dealer and that the misrepresentation caused them to suffer emotional injuries for which they should receive redress.
Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. For a claim of misrepresentation to go to a jury, a plaintiff must put forth evidence of each element of fraud — that there was 1) a false representation 2) concerning a material fact 3) relied upon by the plaintiff, 4) who must, as a proximate result of the misrepresentation, have sustained damages. Bank of Red Bay v.King, 482 So.2d 274, 281 (Ala. 1985).
The facts in Ivey Corp. v. Yates, supra, upon which the trial court relied, are as follows: The plaintiffs, Mr. and Mrs. Yates, wanted to purchase a new automobile from Toyota of Anniston. (Toyota of Anniston was the trade name of Ivy Corporation.) At the time of purchase, the car they selected had 942 miles on the odometer. Upon inquiry from Mrs. Yates, the dealer told her that the mileage was attributable to other customers' test drives. The Yateses later discovered that the owner's manual for the car listed Cedrick Farrior as the owner. The president of Toyota of Anniston then explained to the Yateses that Mr. Farrior had attempted to purchase the car and had taken it home on approval, but that the sale had failed for lack of financing. Mr. Farrior had signed a retail installment sales contract, an odometer mileage statement, and an application for certificate of title, but none of these was filed by Toyota of Anniston. Mr. Farrior did not acquire title to the car. Mrs. Yates sued Ivy Corporation for fraud in representing that the vehicle was "new" when, in her estimation, it was actually "used." The case proceeded to trial and the jury returned a general verdict in favor of Mrs. Yates and awarded damages of $40,000. Ivy Corporation's motion for a JNOV was denied; on appeal the judgment was reversed. This Court determined that because Ivy Corporation did not accept Mr. Farrior's application for credit, file the application for title, or deliver a bill of sale to Mr. Farrior, and because Mr. Farrior did not keep the car, no "sale" occurred. We stated that the negotiations with Mr. Farrior did not constitute a sale and that they were not a material fact that needed to be disclosed to Mrs. Yates. We further held that "[b]ecause the car had not been sold to Mr. Farrior and because its status as a new car was not otherwise in question," there was insufficient evidence of misrepresentation in the sale, so the motion for a JNOV should have been granted. 516 So.2d at 560.
The trial court here correctly relied on Yates and entered a judgment in favor of the defendants on the issue of whether they misrepresented that the Escort was a "new" car. In spite of the Underwoods' efforts to distinguish the cases, we find the relevant facts in this case to be substantially identical to those in Yates. In Yates and in this case, the automobile was sold as "new" and the buyers were not informed of previous negotiations with prospective purchasers that failed to result in a completed sale. As in Yates, we hold here that the preliminary negotiations between Ms. Lawler and the defendants did not constitute a sale and they were not a "material *Page 54 
existing fact" that these defendants needed to disclose to the Underwoods. Based on our decision in Yates, we hold that there was no evidence of misrepresentation regarding the "new" status of the Escort the Underwoods purchased.
Based on the foregoing, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and HOUSTON, J., concur.
JONES and KENNEDY, JJ., concur in the result.
[1] Although the style of the case refers to "Ivey" Corporation, the opinion refers to "Ivy" Corporation.