646 So.2d 1366 (1994)
The SOAP COMPANY and Andy Anderson
v.
ECOLAB, INC. and Mike Todd.
ECOLAB, INC. and Mike Todd
v.
The SOAP COMPANY and Andy Anderson.
1921379, 1921518.
Supreme Court of Alabama.
September 16, 1994.
*1368 Lee E. Bains, Jr., Gregory H. Hawley and Stephen C. Jackson of Maynard, Cooper & Gale, P.C., Birmingham, for appellants/cross appellees The Soap Co., et al.
John R. Chiles, Frances Heidt and David W. Long of Sirote & Permutt, P.C., Birmingham, for appellees/cross appellants.
KENNEDY, Justice.
These appeals arise from a case involving allegations of tortious interference with business relations. The Soap Company and Andy Anderson appeal from a summary judgment in favor of the defendants, Ecolab, Inc., and Mike Todd. Ecolab and Todd appeal from a summary judgment in favor of the Soap Company and Anderson on Ecolab and Todd's counterclaim.
Andy Anderson is the president and principal shareholder of the Soap Company, an Alabama corporation that manufactures and sells laundry and dishwashing detergents to commercial businesses. Mike Todd is a salesman for Ecolab, which also manufactures and sells commercial detergents.
Before founding the Soap Company, Anderson was a service manager for Ecolab in Birmingham. The Soap Company began as a service company to repair commercial laundry and dishwashing machines. Later, it started manufacturing soap products for these machines. Initially, the Soap Company offered free service on the customer's equipment along with the purchase of detergents. The Soap Company attracted new customers, many of which were former customers of Ecolab.
According to the Soap Company, Ecolab set out on a deliberate and malicious plan to put the Soap Company out of business. The Soap Company presented memorandums written by employees of Ecolab developing a strategy to identify and acquire as many of the Soap Company accounts as possible. The memorandums also detailed a "mission" to remove $200,000 in business from the Soap Company, stating that a business of its size could not survive with such losses.
One of the memorandums was entitled "The Soap CompanyFirst Assault." In it were statements from an Ecolab manager outlining a strategy:
"Personally, the existence of the Soap Company bothers me. The collective knowledge of all concerned estimates their volume around $800,000 with all but two identifiable accounts being within the State of Alabama.... Mission: To remove a minimum of $200,000 annualized business by October 31st. Any business that size cannot survive business losses of this magnitude. Those dollars directly impact the bottom line and any response by them also takes more dollars off the bottom line. Second step is to sell another $200,000 in annualized business between November 1st and December 31st one account at a time. Goal: Have one less competitor in the Alabama marketplace and a major part of the $800,000 volume carrying forward into 1990 as growth to us."
The memorandum identified one account in particular:
"[W]e have sued [this particular business] twice in the past for payment and we have no assurances that we won't have another collection problem, but it's a risk we have to live with because the loss of a $50,000 account (presumably with money still owed to the Soap Co.) will kill them."
The assistant vice president of national accounts for Ecolab wrote, "[W]e have a situation in Birmingham, Alabama where a group of ex-EL [Ecolab] people are operating a competitor called the Soap Company. We are in a war at this time trying to put them out of business."
Ecolab's version of the facts is as follows: Anderson and his wife began a pattern and practice of entering premises shared by Ecolab and other companies after business hours *1369 in order to steal documents from a trash dumpster located on the premises. The type of documents that Anderson retrieved included proposals to specific customers, customer complaints, and price lists. Ecolab claims that the Soap Company was able to obtain a competitive edge in the market by obtaining this information and that Ecolab's actions were in response to the Soap Company's attempt to take Ecolab's customers.
The Soap Company and Anderson sued Ecolab and Todd, alleging tortious interference with business relations and claiming damages for financial loss and mental anguish to Anderson. Ecolab and Todd counterclaimed, alleging that the retrieval of Ecolab's documents from the trash dumpster was trespass, conversion, and a violation of the Alabama Trade Secrets Act, Ala.Code 1975, § 8-27-1 et seq.
The Soap Company and Anderson moved for a summary judgment on both their complaint and the counterclaim. In support of the motion, they presented memorandums and affidavits concerning Ecolab's plan to obtain the Soap Company's accounts. Ecolab and Todd also moved for a summary judgment on the complaint and on the counterclaim, claiming that they were entitled to a "competitor's privilege," which, they say, provides a business justification for interference with the Soap Company's customers. Additionally, Ecolab presented affidavits concerning Anderson's alleged trespass, conversion, and improper use of trade secrets.
The trial court entered a summary judgment in favor of Ecolab and Todd on the tortious interference with business relations claim. It also entered a summary judgment in favor of the Soap Company and Anderson on the trespass, conversion, and trade secrets claim.
Before discussing the appropriateness of the summary judgments entered in this case, this Court must decide whether to adopt the competitor's privilege as a defense to a claim of tortious interference with business relations. The competitor's privilege applies when the contract involved is terminable at will or when the defendant causes a third person not to enter into a prospective contract with another who is his competitor.
This Court has adopted the tort of tortious interference with business relations, based on § 767, Restatement (Second) of Torts (1977). See Gross v. Lowder Realty Better Homes & Gardens, 494 So.2d 590 (Ala.1986). A companion doctrine to the tort of interference with business relations is the "competitor's privilege." Section 768, Restatement (Second) of Torts, states:
"One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue in an existing contract terminable at will does not interfere improperly with the other's relation if
"(a) the relation concerns a matter involved in the competition between the actor and the other, and
"(b) the actor does not employ wrongful means and
"(c) his action does not create or continue an unlawful restraint of trade and
"(d) his purpose is at least in part to advance his interest in competing with the other.
"(2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will."
Comment b to § 768 states:
"The rule stated in this Section is a special application of the factors determining whether an interference is improper or not, as stated in § 767. One's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors. In order not to hamper competition unduly, the rule stated in this Section entitles one not only to seek to divert business from his competitors generally but also from a particular competitor. And he may seek to do so directly by express inducement as well as indirectly by attractive offers of his own goods or services."
The element of the competitor's privilege requiring that the competitor not "employ *1370 wrongful means" is discussed in comment e to § 768:
"If the actor employs wrongful means, he is not justified under the rule stated in this Section. The predatory means discussed in § 767, Comment c, physical violence, fraud, civil suits and criminal prosecutions, are all wrongful in the situation covered by this Section. On the other hand, the actor may use persuasion and he may exert limited economic pressure....
"The rule stated in this Section rests on the belief that competition is a necessary or desirable incident of free enterprise. Superiority of power in the matters relating to competition is believed to flow from superiority in efficiency and service. If the actor succeeds in diverting business from his competitor by virtue of superiority in matters relating to their competition, he serves the purpose for which competition is encouraged."
We find persuasive this statement of the Seventh Circuit Court of Appeals with regard to what constitutes "wrongful means":
"We think these limitations by the various authorities on the tort of interference with prospective business relations are appropriate. Competitors and their allies are not necessarily gentlemenor even scholars. Competition may be rough and tumble and evenwithin reasonable boundsinvolve economic factors extraneous to the main competition itself. We do not believe a searching analysis only of motive is in most instances enough to send these cases to the jury. There must still under the Indiana cases be something `illegal' about the means employed."
Great Escape, Inc. v. Union City Body Co., 791 F.2d 532, 543 (7th Cir.1986).
We note that other jurisdictions have adopted the competitor's privilege as a defense to tortious interference with contracts or business relations.[1]
This Court expressly adopts the competitor's privilege as a defense to a claim of tortious interference with business relations. With this in mind, we turn to the summary judgments entered in this case.
A summary judgment is appropriate only when the moving party shows "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), A.R.Civ.P. Once *1371 the moving party has made a prima facie showing that there is no genuine issue of material fact, the nonmoving party must present substantial evidence creating a genuine issue of material fact. Hope v. Brannan, 557 So.2d 1208 (Ala.1989). The evidence must be viewed in the light most favorable to the nonmoving party. Underwood v. Adamson Ford, Inc., 564 So.2d 51 (Ala.1990).
Did the trial court err in entering the summary judgment in favor of Ecolab and Todd based on the Soap Company and Anderson's claim of tortious interference with business relations? The elements of the tort of intentional interference with business relations are: 1) the existence of a contract or business relation; 2) the defendant's knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant's interference; and 5) damage to the plaintiff as a result of the interference. Gross v. Lowder Realty Better Homes & Gardens, 494 So.2d 590 (Ala.1986), citing Restatement (Second) of Torts § 767 (1977).
We agree that, viewed in the light most favorable to the Soap Company and Anderson, the Ecolab memorandums and the affidavits from Ecolab employees present a jury question as to whether Ecolab and Todd tortiously interfered with the Soap Company's business relations.
As was noted in Gross, the fourth element of tortious interference with business relations, the absence of justification for the interference, really relates to an affirmative defense to be pleaded and proved by the defendant, namely, the defense of justification. Generally, whether the defendant is justified in the interference is a question to be resolved by the trier of fact. Gross, 494 So.2d at 597, citing Polytec, Inc. v. Utah Foam Products, Inc., 439 So.2d 683 (Ala. 1983).
The following factors should be considered in determining whether a defendant's interference was justified: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the person in whose business the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relations between the parties. Gross.
Legitimate economic motives and bona fide business competition qualify as justification for interfering with a competitor's business. Bridgeway Communications, Inc. v. Trio Broadcasting, Inc., 562 So.2d 222 (Ala.1990). This Court has held that "`competition in business, even though carried to the extent of ruining a rival, constitutes justifiable interference in another's business relations, and is not actionable, so long as it is carried on in furtherance of one's own interests.' " Bridgeway, 562 So.2d at 223, quoting Beasley-Bennett Electric Co. v. Gulf Coast Chapter of the National Electrical Contractors Ass'n, 273 Ala. 32, 35, 134 So.2d 427, 429 (1961).
We hold that Ecolab and Todd are entitled to present, in addition to the justification defense, the competitor's privilege defense discussed earlier.
As to the claims presented by Ecolab and Todd against the Soap Company and Anderson, the trial court erred in entering the summary judgment. Viewing the evidence in the light most favorable to Ecolab and Todd, we conclude that it is up to the trier of fact to determine whether the discarded documents retrieved from the common trash dumpster located on the leased premises constituted trespass and conversion.
The last issue is whether Ecolab presented substantial evidence that Anderson and the Soap Company violated the Alabama Trade Secrets Act. Section 8-27-2 defines "trade secret":
"(1) TRADE SECRET. A `trade secret' is information that:
"a. Is used or intended for use in a trade or business;
"b. Is included or embodied in a formula, pattern, compilation, computer software, *1372 drawing, device, method, technique, or process;
"c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
"d. Cannot be readily ascertained or derived from publicly available information;
"e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and
"f. Has significant economic value."
We hold that it is a jury question as to whether the Ecolab memorandums contained "trade secrets" as defined by § 8-27-2 and whether Ecolab made reasonable efforts to maintain the secrecy of the discarded documents.
Based on the foregoing, the summary judgments are reversed and the cause is remanded for trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, INGRAM and COOK, JJ., concur.
MADDOX and HOUSTON, JJ., concur specially in part and dissent in part.
HOUSTON, Justice (concurring specially in part and dissenting in part).
I cannot say that, as a matter of law, Ecolab's actions were justified. It appears to me that the trier of the facts must determine whether Ecolab was using bona fide business competition for legitimate economic motives. If so, its actions were justified. However, the trier of the facts could determine, from the evidence that was before the trial court when it entered the summary judgment, that Ecolab was maliciously abusing a lawful privilege. One might conclude that Machiavelli's Prince would be alive and well and residing in Alabama if, under this Court's interpretation of § 768 of the Restatement (Second) of Torts (1977), malicious abuse of the lawful privilege of competition is not the equivalent of the "employ[ment of] wrongful means." Therefore, the issue of justification in this case should be an issue for the jury to resolve. Browning-Ferris Industries v. Kelco Disposal, Inc., 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989); St. Louis-San Francisco Ry. v. Wade, 607 F.2d 126, 133 (5th Cir.1979); Byars v. Baptist Medical Center, Inc., 361 So.2d 350, 356 (Ala.1978). Therefore, I concur with the majority's resolution of this issue.
However, as to the claims presented by Ecolab against the Soap Company and Anderson, I believe the trial court correctly entered the summary judgment. Viewing the evidence in the light most favorable to Ecolab, I think it is clear that the discarded documents were left in a common trash dumpster located in a parking lot used by several other tenants in the building besides Ecolab.
In California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the United States Supreme Court reasoned that a person has no legitimate expectation of privacy in trash he voluntarily turns over to a third party (i.e., the trash collector). Trash left on the street is accessible to "animals, children, scavengers, snoops, and other members of the public." 486 U.S. at 40, 108 S.Ct. at 1628-1629.
In this case, the trash dumpster was located outside, in a parking lot next to the building; the parking lot was used by all the tenants in the building, and all the tenants placed their trash in this same common dumpster. Trash was placed in the dumpster for the purpose of conveying it to the trash collector. Additionally, Ecolab's office lease did not give Ecolab a possessory interest in the parking lot. Therefore, Ecolab and Todd's claims of trespass and conversion must fail.
As to the alleged violation of the Trade Secrets Act, Ecolab failed to make a reasonable effort under the circumstances to maintain the secrecy of any of the documents. As mentioned, Ecolab placed its trash (the documents it now argues are secret), unshredded, in a common dumpster located outside in a parking lot next to the building where it leased space. I think that Ecolab's reliance on Drill Parts & Service Co. v. Joy Manufacturing Co., 439 So.2d 43 (Ala.1983), in support of its trade secrets claim, is misplaced, *1373 because that case was decided before Greenwood and before the passage of the Trade Secrets Act.
I would affirm the summary judgment on the trade secrets claim; therefore, I dissent as to this issue.
MADDOX, J., concurs.
NOTES
[1] The following list of cases indicates the jurisdictions adopting § 768: Bar J Bar Cattle Co. v. Pace, 158 Ariz. 481, 763 P.2d 545 (Ct.App.1988); Kinko, Inc. v. Schueck Steel, Inc., 283 Ark. 72, 671 S.W.2d 178 (1984); Loral Corp. v. Moyes, 174 Cal.App.3d 268, 219 Cal.Rptr. 836 (1985); Hutton v. Memorial Hospital, 824 P.2d 61 (Colo. App.1991); Republic Systems & Programming, Inc. v. Computer Assistance, Inc., 322 F.Supp. 619 (D.Conn.1970); International City Management Ass'n Retirement Corp. v. Watkins, 726 F.Supp. 1 (D.D.C.1989); Heavener, Ogier Services, Inc. v. R.W. Florida Regions, Inc., 418 So.2d 1074 (Fla.Dist.Ct.App.1982); American Buildings Co. v. Pascoe Building Systems, Inc., 260 Ga. 346, 392 S.E.2d 860 (1990); Mannion v. Stallings & Co., 204 Ill.App.3d 179, 149 Ill.Dec. 438, 561 N.E.2d 1134 (1990); Hesmer Foods, Inc. v. Campbell Soup, Inc., 346 F.2d 356 (7th Cir.1965) (applying Indiana law); Reazin v. Blue Cross & Blue Shield of Kansas, Inc., 663 F.Supp. 1360 (D.Kan.1987); Fowler v. Printers II, Inc., 89 Md.App. 448, 598 A.2d 794 (1991); W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App.Ct. 744, 616 N.E.2d 118 (1993); Northern Plumbing & Heating, Inc. v. Henderson Bros., Inc., 83 Mich.App. 84, 268 N.W.2d 296 (1978); Schumacher v. Ihrke, 469 N.W.2d 329 (Minn.App. 1991); Jacomo Ins. Service, Inc. v. Billups, 787 S.W.2d 304 (Mo.App.1990); Miller Chemical Co. v. Tams, 211 Neb. 837, 320 N.W.2d 759 (1982); Crockett v. Sahara Realty Corp., 95 Nev. 197, 591 P.2d 1135 (1979); Xeta, Inc. v. Atex, Inc., 825 F.2d 604 (1st Cir.1987) (applying New Hampshire law); C.R. Bard, Inc. v. Wordtronics Corp., 235 N.J.Super. 168, 561 A.2d 694 (1989); M & M Rental Tools, Inc. v. Milchem, Inc., 94 N.M. 449, 612 P.2d 241 (1980); Kaplan v. Heinfling, 136 A.D.2d 34, 526 N.Y.S.2d 73 (1988); United Laboratories, Inc. v. Kuykendall, 87 N.C.App. 296, 361 S.E.2d 292 (1987); Walter v. Murphy, 61 Ohio App.3d 553, 573 N.E.2d 678 (1988); Ramirez v. Selles, 96 Or.App. 340, 772 P.2d 952 (1989); Gilbert v. Otterson, 379 Pa.Super. 481, 550 A.2d 550 (1988); Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island, Inc., 883 F.2d 1101 (1st Cir.1989) (applying Rhode Island law); Waldrep Bros. Beauty Supply Co. v. Wynn Beauty Supply Co., Inc., 992 F.2d 59 (4th Cir.1993) (applying South Carolina law); Caller-Times Pub. Co. Inc. v. Triad Communications, Inc., 855 S.W.2d 18 (Tex. App.1993); Williams v. Chittenden Trust Co., 145 Vt. 76, 484 A.2d 911 (1984); Island Air, Inc. v. LaBar, 18 Wash.App. 129, 566 P.2d 972 (1977); Torbett v. Wheeling Dollar Sav. & Trust Co., 173 W.Va. 210, 314 S.E.2d 166 (1983); Liebe v. City Finance Co., 98 Wis.2d 10, 295 N.W.2d 16 (1980); Price v. Sorrell, 784 P.2d 614 (Wyo.1989).