Susan **FERRARO**, Plaintiff,

v.

**BELL ATLANTIC COMPANY, INC., et al., Defendants.**

**Civil No. 96–6111(CSF).**

United States District Court, D. New Jersey.

Feb. 20, 1997.

Law Offices of Linda B. Kenney, by Linda B. Kenney, Nancy S. Martin, Gregory S. Schaer, Red Bank, NJ for Plaintiff.

Carpenter, Bennett & Morrissey, by Francis X. Dee, David J. Reilly, Pamela Davis–Clarke, Newark, NJ for Bell Atlantic–New Jersey, Inc.

## AMENDED OPINION

CLARKSON S. FISHER, District Judge.

This matter comes before the court on plaintiff's motion to remand to the Superior Court of New Jersey, Monmouth County, Law Division. Plaintiff's complaint was filed on November 6, 1996, in the Superior Court, and contained six counts: (1) discrimination on the basis of gender in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5–1 *et seq;* (2) hostile work environment in violation of the NJLAD; (3) retaliation for filing a complaint in violation of the NJLAD; (4) intentional infliction of emotional distress against defendant Daniel Galbraith; (5) breach of an express and/or implied contract against defendant Bell Atlantic; (6) breach of the covenant of good faith & fair dealing against defendant Bell Atlantic. Defendant filed a notice of removal pursuant to 28 U.S.C. § 1441 on December 30, 1996. For the reasons set forth below, plaintiff's motion to remand will be denied.

Plaintiff began her employment with Bell Atlantic Company, Inc. on or about December 30, 1974. As an employee, plaintiff is a member of the International Brotherhood of Electrical Workers, AFL–CIO, Local # 827 ("Union"). A collective bargaining agreement ("CBA") exists between Bell Atlantic–New Jersey and Local # 827. Plaintiff's position was as a "Systems Technician" in the radio/video department, specializing in mobile/temporary communications. Plaintiff was the only female in this department and she was the only female in this field of mobile/temporary communications. She had obtained a Federal Communications Compliance ("FCC") license and was Bellcore certified. Plaintiff alleges that she was the only employee that had obtained both accreditations.

Plaintiff alleges that beginning sometime in or about October 1992, defendants began treating her in a hostile, demeaning and threatening manner. Plaintiff alleges that she attempted to speak to her male co-workers, yet the hostile work environment continued. Plaintiff alleges that she repeatedly told her supervisor, Bruce Pierson, about the environment, yet no resolution was reached. Plaintiff alleges that on or about November 10, 1994, when the hostile work environment had not improved she spoke with the Union representative, Diane McNamara, about the hostile work environment and the threatening behavior of certain co-workers. Plaintiff also contacted the Equal Employment Opportunity ("EEO") officer to inform him of the situation.

Plaintiff alleges that the environment grew increasingly more hostile and eventually caused her to become ill and see a physician.

Her treating physician, Dr. Katz, initially advised plaintiff that she needed to take time off from work because the stress in the workplace was affecting her health. Dr. Katz later ordered plaintiff to remain out of work. This recommendation was made on a week-to-week basis. On November 29, 1994, pursuant to defendant Bell Atlantic's policies, plaintiff's disability benefits began. Plaintiff sought counseling through Bell Atlantic's Employee Assistance Program and, upon termination of that benefit, continued counseling sessions with Dr. Rubin. Plaintiff alleges that because of the hostile work environment and gender discrimination, she applied for Social Security Disability benefits and was determined to be entitled to benefits as of August 1, 1996.

Plaintiff alleges that after she was forced to leave her employment on a disability leave, Bell Atlantic never provided her with her accrued vacation time for 1994 or for any time for which she may be entitled. Plaintiff alleges that Bell Atlantic's failure to pay her for her accrued vacation time is in violation of Bell Atlantic's policies and practices.

Additionally, plaintiff alleges that because of Bell Atlantic's failure to provide her with her accrued vacation time, her length of service with the company was affected, and thus Bell Atlantic paid plaintiff at half pay instead of extending her full-time payments to correspond with her actual length of service. Plaintiff alleges that this was in contradiction to Bell Atlantic's own policies regarding the length of time an employee may receive full-time salary.

Plaintiff also alleges that she never received the contract raise negotiated by the Union which became effective on May 21, 1995.

Plaintiff alleges that she was informed, just prior to the end of short-term disability ("STD") benefits that she would be considered retired and begin receiving long-term disability ("LTD") benefits. Less than a month later, plaintiff received a notice that she must apply for long-term disability benefits. Eventually, on or about July 9, 1996. plaintiff's request for long-term disability benefits was denied.

The issue presently before the court is whether Counts Five and Six of plaintiff's complaint are preempted by either the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144, or Section 301 of the Labor Management Relation Act ("LMRA"), 29 U.S.C. § 185.

A defendant sued in state court can remove the case to federal district court if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of establishing its propriety. *See Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991). The Third Circuit instructs district courts to construe removal statutes strictly in favor of remand. *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1267 (3d Cir.1994).

Where there is no diversity between the parties, a defendant may remove a case if the plaintiff's claim arises under federal law within the meaning of 28 U.S.C. § 1331. *La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339, 343–344 (3d Cir.1974), *cert. denied*, 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975). Plaintiff argues that this case is not removable, because all counts are grounded in state law. Plaintiff argues that "whether an action arises under federal law is determined by an examination of the claims as set forth in the complaint rather than the pleaded facts underlying them." *Box Tree South, Ltd. v. Bitterman*, 873 F.Supp. 833, 837 (S.D.N.Y.1995). "The well-pleaded complaint rule is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1986).

Defendant, Bell Atlantic–New Jersey, Inc. ("defendant"), argues that plaintiff's state law claim for breach of express and/or implied contracts to compensate her for accrued vacation time, and to provide her with collectively bargained-for wage increase, and her claim that defendant denied her certain STD and LTD benefits in violation of defendant's policies and practices are founded directly upon rights created by the applicable

collective bargaining agreement, and can be resolved only by interpretation of that collective bargaining agreement. Defendant alleges that therefore, these claims are preempted by Section 301 of the LMRA, 29 U.S.C. § 185.

Defendant also contends that plaintiff's claim for breach of the covenant of good faith and fair dealing, which contains allegations regarding STD and LTD benefits, directly relates to employee benefit plans and is preempted by ERISA, and, as such arises under Section 502(a)(1)(B) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B), of which the United States District Courts have original jurisdiction pursuant to 29 U.S.C. § 1132 and Sections 502(e) and (f) of ERISA, 29 U.S.C. § 1132(e) and (f), and, therefore, was properly removed.

■ "One corollary of the well pleaded complaint rule developed in the case law … is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. at 1546. "For twenty years, [the U.S. Supreme Court] has singled out claims pre-empted by § 301 of the LMRA for such special treatment." *Id.* at 64, 107 S.Ct. at 1546 (citing *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968)). In referring to what is currently labeled the *Avco* principle, the Supreme Court held in *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal., et al.,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)

> The necessary ground of the decision [in Avco] was that the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.

*Id.* at 23, 103 S.Ct. at 2854.

■ This court first turns to the issue of preemption under § 301 of the LMRA. In *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Supreme Court held that

> [i]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law … is pre-empted and federal labor-law principles … must be employed to resolve the dispute.

*Id.* at 405–406, 108 S.Ct. at 1881 (citing *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). Plaintiff alleges that defendant never provided her with her accrued vacation time for 1994 or for any time for which she may be entitled. Complaint ¶ 55. Furthermore, plaintiff alleges that defendant's failure to pay her for her accrued vacation time is in violation of defendant's policies and practices and constitutes a breach of express and/or implied contract. *Id.* at ¶ 56. Additionally, plaintiff alleges that she has been harmed as a result of defendant's actions. *Id.* at ¶ 57. Plaintiff also alleges that she never received the contract raise negotiated by the Union which became effective on May 21, 1995. *Id.* at ¶ 61. These allegations are set forth under both Counts Five and Six of plaintiff's complaint.

Plaintiff argues that the CBA simply offers an alternative to an action under state law. Plaintiff admits that she included the loss of her payment for vacation time in her complaint, yet argues that this issue can be decided clearly as a breach-of-contract claim under state law. However, the contract relied upon is the CBA, *see McCandless,* 50 F.3d at 229, as plaintiff's claims for vacation benefits and the negotiated wage increase which became effective on May 21, 1995, are defined by the CBA. Affidavit of Joseph L. Agrusti ¶¶ 4–5. Therefore, this court must necessarily interpret those provisions to resolve plaintiff's claims. Plaintiff is indirectly requesting that this court determine whether there was a violation of the CBA and subsequently determine the outcome of plaintiff's state common law claim. Plaintiff's artful pleading will not prevent this court from finding that this claim is completely preempted by § 301 of the LMRA, as it is fundamentally based on an alleged violation of the CBA.

This court next turns to the issue of ERISA preemption. ERISA defines an "employee welfare benefit plan" as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer, or by an employee organization, or by both, to the extent that such plan, fund, or program was established or maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits, or *benefits in the event of sickness, accident, disability,* death or unemployment, or vacation benefits, apprenticeship or other training programs or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in 29 U.S.C. § 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

■ The Third Circuit has held that the complete preemption doctrine applies only if two circumstances are met. First, "the statute relied upon by the defendant as preemptive [must] contain civil enforcement provisions within the scope of which the plaintiff's state claim falls." *Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306, 311 (3d Cir.1994) (other citations omitted). Secondly, there must be "a clear indication of Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Id.* (other citations omitted). The analysis of these prerequisites to the ERISA preemption issue asserted by the defendant in the present case, was addressed by the Supreme Court in *Metropolitan Life.*

The facts of *Metropolitan Life* forced the Supreme Court to resolve the question of "whether or not the *Avco* principle could be extended to statutes other than the LMRA in order to recharacterize a state law complaint displaced by § 502(a)(1)(B) as an action arising under federal law." *Metropolitan Life,* 481 U.S. at 64, 107 S.Ct. at 1547. Basing its holding on the similarity of language between § 301 of the LMRA and ERISA's civil enforcement provisions, as well as legislative history, the Supreme Court held that Congress clearly intended "to make § 502(a)(1)(B) suits brought by participants or beneficiaries, federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA." *Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. at 1547. The Court held that "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Id.*

In *Metropolitan Life,* as in the instant case, the plaintiff filed suit against his employer alleging various state-law causes of action, including a claim he had been wrongfully denied disability benefits. The employer subsequently removed the case to federal court. The United States Supreme Court held that ERISA preempted the state common law cause of action for disability benefits, because the action "related to" an employee benefit plan under 29 U.S.C. § 1144. *Id.* at 62–63, 107 S.Ct. at 1545–46. The Court stated that the action was "necessarily federal in character" and thus was removable to federal court under 28 U.S.C. § 1441. *Id.* at 63, 107 S.Ct. at 1546.

■ Count Six of the complaint is labeled "breach of the covenant of good faith and fair dealing." The Superior Court of New Jersey, Appellate Division set forth in *East Penn Sanitation, Inc. v. Grinnell Haulers,* 294 N.J.Super. 158, 682 A.2d 1207 (1996), that " 'every contract' has 'an implied covenant of good faith and fair dealing,' which 'applies to the parties' performances and their enforcement of the contract.' " *Id.* at 170, 682 A.2d 1207 (other citations omitted). In the present case, plaintiff alleges that defendant's alleged failure to provide plaintiff with her accrued vacation time for 1995 and to provide payment for unused vacation time from 1994 resulted in a miscalculation which was in contradiction to defendant's own policies regarding the length of time an employee may receive full-time salary as set forth in the Bell Atlantic Sickness & Accident Disability Plan and Long Term Disability Plan ("Plan"). Complaint ¶ 60. See Plan at Exhibit "A" to Agrusti Certification. Furthermore, plaintiff alleges that if she had been given her net credited service, her disability

leave would have been extended at full pay for thirty-nine weeks and then half pay for an additional thirteen weeks. Complaint ¶ 60. Plaintiff also alleges under Count Six of the complaint that to this date she has been denied her disability benefits. *Id.* ¶ 65.

Although plaintiff appears to set forth a state common-law claim under Count Six, this court finds that plaintiff has again artfully pled a claim which is in fact an ERISA issue. The state-law claim alleged under Count Six clearly involves the "recovery of benefits due under the terms of [the] plan," *See Mints v. Educational Testing Serv.*, No. 95–3446, at 6, 1995 WL 907598, *aff'd* 99 F.3d 1253 (3d Cir.1996) and, "relates to" an employee benefit plan so as to make the action "necessarily federal in character" under 29 U.S.C. § 1144. *See Metropolitan Life.* Although plaintiff does not directly request that this court specifically enforce rights under the plan, her reliance on defendant's alleged failure to provide benefits due under the plan as a basis for her claim forces this court to determine whether defendant properly executed the ERISA plan. To that end, plaintiff is requesting that this court determine if any benefits are owing to her, and subsequently determine whether her claims will prevail. Therefore, this court finds that part one of the two-part test under *Goepel* has been met. Part two of the test has been addressed above, as Congress has expressed a clear intent to permit removal despite the plaintiff's exclusive reliance on state law. *See Metropolitan Life.* To the extent that plaintiff has alleged as a basis for Count Six of her complaint that defendant made errors in calculating the disability benefits to which she was entitled, her state common law claims are preempted by ERISA.

In conclusion, this court finds that plaintiff's claims are preempted by the LMRA and ERISA and, therefore, "arise[ ] under the ... laws ... of the United States." 28 U.S.C. § 1331. Plaintiff's motion to remand is denied, as this case was properly removed to federal court by the defendants.